**UNITED STATES of America ex rel. Alonzo Howard JONES, Petitioner,**

v.

**Gayle M. FRANZEN, Illinois Penal Director and William J. Scott, Illinois Attorney General, Respondents.**

No. 80–1097.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 6, 1982.

Decided April 16, 1982.

---

Barry Levenstam, Chicago, Ill., for petitioner.

David Bindi, Asst. Atty. Gen., Chicago, Ill., for respondents.

Before CUMMINGS, Chief Judge, MARKEY,* Chief Judge, and POSNER, Circuit Judge.

MARKEY, Chief Judge.

Ordering no response from the state and reviewing only the submissions of petitioner, the district court summarily dismissed Jones' petition for a writ of habeas corpus. In view of 28 U.S.C. § 2254(d)(8),[1] we are required to reverse and remand.[2]

---

* Howard T. Markey, Chief Judge of the United States Court of Customs and Patent Appeals, is sitting by designation.

1. § 2254. State custody; remedies in State courts

\* \* \* \* \* \*

(d) In any proceeding instituted in a Federal court by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction in a proceeding to which the applicant for the writ and the State or an officer or agent thereof were parties, evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct,

\* \* \* \* \* \*

(8) . . . unless that part of the record of the State court proceeding in which the determination of such factual issue was made, pertinent to a determination of the sufficiency of the evidence to support such factual determination, is produced as provided for hereinafter, and the Federal court on a consideration of such part of the record as a whole concludes that such factual determination is not fairly supported by the record:

\* \* \* \* \* \*

2. Jones filed this petition on October 10, 1979, five years and eight months after his conviction was affirmed by the Supreme Court of Illinois. Time has wrought its changes. Entirely apart from its merits, the case can be classed among those generating current suggestions that prisoner petitions for the Great Writ not based on newly discovered evidence be statutorily precluded if not filed within a specified time.

## Background

As described by the Supreme Court of Illinois, *People v. Bassett*, 56 Ill.2d 285, 287–88, 307 N.E.2d 359, 361 (1974), a prison riot occurred at Menard Penitentiary on November 23, 1965. Just after 4:00 p. m. on that day, during supper, four inmates (Bassett, Brown a/k/a Griffin, Stamps, and Jones) precipitated the riot, stabbed to death three guards, wounded seven or eight other guards, seized and held hostages in the kitchen and refused to come out for four hours, during which each made inculpatory statements.

After a four-month trial, which produced a 12,000 page record and ended on August 30, 1966, the four defendants were convicted of the three murders. Bassett, Stamps, and Jones were sentenced to death, Griffin to 50–75 years, on each count.

In a post-conviction hearing, the four defendants alleged numerous errors, submitting two unsworn letters and sworn affidavits and testimony of six other inmates. After considering those submissions, along with counter-affidavits and testimony, the trial court denied the defendant's motion for a new trial.

Imposition of the death penalty precipitated direct appeal to the Supreme Court of Illinois under its Rule 603 (50 Ill.2d R. 603). Resentencing was deemed necessary in view of *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972) and *Moore v. Illinois*, 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972).

Among the numerous errors alleged at the post-conviction proceeding and on appeal to the Illinois Supreme Court are these asserted on this appeal: (1) Knowing use of perjured testimony; (2) Failure to disclose offers of leniency to inmate witnesses; (3) Admission of co-defendants' inculpatory statements; (4) Withholding witness' statements; (5) Preventing interviews of witnesses; and (6) Improper sequestration of the jury.

On January 31, 1974, the Illinois Supreme Court, looking to the state's theory that the defendants, as parties to an escape plan, were each accountable for crimes committed in pursuance of the plan, affirmed the convictions, holding: (1) Defendants did not carry their burden of proof on use of perjured testimony, and that the proof offered, if believed, would nonetheless fail to support a reversal because it pertained only to the actual stabbings and did not therefore affect the state's accountability theory; (2) Offers of leniency, if made, failed to support a claim of perjury in view of *People v. Harris*, 55 Ill.2d 15, 302 N.E.2d 1 (1973); (3) Co-defendants' statements were not excludable under *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), because the complaining defendant had made similar inculpatory admissions, as in *People v. Rosochacki*, 41 Ill.2d 483, 244 N.E.2d 136 (1969); (4) The withheld "statements" (white cards on which prosecutors had made distilled summaries of earlier, destroyed notes of some 800 witnesses' actual statements) should have been produced but failure to do so was not reversible error because the testimony of the witnesses was not required to prove defendants guilty of murder on the accountability theory. (Two Justices expressed the view that production of the cards should not be required, except insofar as they may contain verbatim or substantially verbatim statements of the witnesses); (5) and (6) Interference with witness interviewing and improper jury sequestration did not raise issues which affect the outcome of the case in view of the overwhelming evidence supporting guilt on the accountability theory.

On October 10, 1979, Jones filed with the district court a *pro se* Petition for Writ of Habeas Corpus, a Motion for Appointment of Counsel, a Petition to Proceed in Forma Pauperis, and a Supporting Financial Affidavit. On October 19, 1979, the district court ordered Jones to file a more definite statement of facts. In response, Jones filed a 400-page volume, entitled "Supportive Documentation", containing excerpts from the post-conviction proceeding, the Illinois Supreme Court opinion in *Bassett, supra,* and the portion of his brief in Bassett relating to jury sequestration. In connection with these filings, Jones asserted the errors (1)–(6) described above.

On December 5, 1979, without ordering the state to respond or reviewing the state court record, the district court, in a one-paragraph minute order, denied leave to file in forma pauperis. Jones filed a Petition for Certification of Probable Cause, a Notice of Appeal, and a Petition to Appeal in Forma Pauperis. On January 23, 1980, the district court, in a second one-paragraph minute order, found Jones a pauper and refused a certificate of probable cause. Without explanation, the district court described Jones' claims as having "no merit whatsoever", a statement interpretable as a finding that Jones' habeas petition was "frivolous". *See* 28 U.S.C. § 1915(d).[3] The district court made no ruling on Jones' motion for appointment of counsel.

On July 7, 1980, this court, noting "a substantial issue for review on appeal", issued a certificate of probable cause, granted leave to appeal in forma pauperis, and appointed counsel.

## ISSUE

The issue is whether, in view of 28 U.S.C. § 2254(d)(8), the district court erred in denying the petition without requiring the state to respond[4] and without reviewing necessary portions of the state court record.

## OPINION

It is undisputed that the findings of state courts are presumed correct on habeas corpus review. 28 U.S.C. § 2254(d); *Sumner v. Mata*, 449 U.S. 539, 547–50, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981); *Brown v. Allen*, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953); *White v. Finkbeiner*, 570 F.2d 194, 201 (7th Cir. 1978); *United States ex rel. Rebenstorf v. Pate*, 417 F.2d 1222, 1225 (7th Cir. 1969). In attempting to meet his burden, Jones

focuses primarily on the presumption-defeating factor listed in § 2254(d)(8), *supra*, note 1, asserting that the state court findings are not fairly supported by the state court trial record.

Respect for the state courts and the fundamentals of federalism require a recognition that state courts are as capable, careful, and compassionate as are federal courts in enforcing compliance with the United States Constitution. Federal district and appellate courts do not exercise appellate jurisdiction over state courts.[5] The federal habeas petitioner, however, is asserting a deprivation of liberty in violation of the Constitution. The impact of that assertion upon the concept of constitutionally-guaranteed freedoms has impelled the courts and the Congress to require a review of state court proceedings sufficient to insure against even those expectably rare instances in which the assertion might prove true. 28 U.S.C. § 2254.

■ Hence the district court must review the state court trial record to determine whether the petitioner for federal habeas corpus relief had received the constitutionally required due process afforded by a full and fair hearing resulting in findings supported by the record, *Townsend v. Sain*, 372 U.S. 293, 316, 83 S.Ct. 745, 758, 9 L.Ed.2d 770 (1963), and may not dismiss the petition without determining that the state court findings are entitled to the presumption of correctness. *United States ex rel. Worlow v. Pate*, 437 F.2d 909 (7th Cir. 1971).

The seeming conflict between a presumption of correctness and the requirement in § 2254(d)(8) for an independent review of the trial court has thus been legislatively resolved, insofar as the federal district

---

**3.** § 1915. Proceedings in forma pauperis

\* \* \* \* \* \*

(d) The court may request an attorney to represent any such person unable to employ counsel and may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious.

\* \* \* \* \* \*

**4.** Learning of the case for the first time in August, 1980, the State of Illinois filed a brief

in this court as Amicus Curiae. The caption of the case lists a ghostly pair of non-parties as "Respondents", creating an aura of quasi-mandamus on this appeal.

**5.** The briefs on this appeal contain assertions that would be appropriate on review of *People v. Bassett, supra,* in the United States Supreme Court.

court review ends upon finding support in the record for the state court findings. The statute precludes application of the presumption "in the blind" (as here) when the facts alleged, if unchallenged, would reflect a denial of constitutional rights.

The district court need not review the entire state trial record (here 12,000 pages), but must review that portion in which the disputed factual determinations were made, 28 U.S.C. § 2254(d)(8), and "such portions of the transcripts as the answering party deems relevant". 28 U.S.C. § 2254 (Rule 5). In sum, the district court must review the "pertinent parts" of the state court trial record. *Montes v. Jenkins*, 581 F.2d 609, 612 (7th Cir. 1978).

Recognizing the necessity for review of the state court record, Amicus argues that the district court's review of Jones' "Supportive Documentation" constituted the required review of the "pertinent parts" of the state trial record. Our review of Jones' submission, under the circumstances on this appeal, persuades us that it did not.

One of the glaring deficiencies among the present circumstances is the election of the district court not to order a response from the named respondents. As a result, the district court and this court are denied an opportunity to review such parts of the trial record as "the answering party deems relevant". On such review, it may well be found that Jones' petition is indeed frivolous.[6] Until the "pertinent parts" of the state trial record are made available, however, the only "record" on this appeal consists of Jones' "Supportive Documentation", on which Jones rests assertions not in themselves frivolous. On the contrary, those assertions might well if true support a grant of the petition. Amicus (State of Illinois), for example, does not deny that Jones' allegations, if proved, would be sufficient to warrant a grant of the relief sought. And that is well, for Jones' allegations (1), (2), (4), and (5), together assert that Jones was denied his due process rights because the state convicted him through creation of false evidence and suppression of truthful evidence.

Amicus perforce argues that Jones' due process rights were preserved by the post trial hearing and state supreme court review of his allegations. That argument, however, in this case runs afoul of section 2254(d)(8) and its requirement that the habeas court determine whether the conclusions of the state courts are "fairly supported by the record". The argument fails also for want of attention to this court's statement in *United States ex rel. Burnett v. Illinois*, 619 F.2d 668, 674, *cert. denied*, 449 U.S. 880, 101 S.Ct. 229, 66 L.Ed.2d 104 (1980), that "Dismissal is appropriate only after an examination of the record for any set of facts to support a claim of knowing use of perjury [Citation omitted]."

■ The summary of facts in the Supreme Court of Illinois opinion in *Bassett, supra*, the only item in the present record that gives information on the crimes of which Jones was convicted, does indicate that the state trial court record would support findings that Jones participated in the escape plan and was thus liable for crimes committed in support of that plan. In *Davis v. Franzen*, 671 F.2d 1057 (7th Cir. 1982), this court held that a habeas corpus judge could, without examining the trial record, reject an allegation that no rational trier of fact could have lawfully convicted petitioner on the evidence at trial and where the testimony is summarized in the state appellate court's opinion and petitioner does not quarrel with that summary. In the present case, however, Jones does quarrel with the summary set forth in the *Bassett* opinion, and, under those circumstances, reliance on the state appellate opinion without review of the trial record is not permissible. *Montes v. Jenkins, supra*, 581 F.2d at 612; *United States ex rel. Jennings v. Ragen*, 358 U.S. 276, 277, 79 S.Ct. 321, 322, 3 L.Ed.2d 296 (1959); *Turner v. Chavez*, 586 F.2d 111, 112 (9th Cir. 1978); *Thacker v.*

**6.** Review and rejection of Jones' alleged errors (1)–(6) by the trial court and the Illinois Supreme Court raises a strong presumption of correctness. Nonetheless, we here make and intend no determination whatever on the merits or lack thereof in Jones' petition.

*Bordenkireher,* 557 F.2d 98, 99 (6th Cir. 1977). We cannot, therefore, as the habeas corpus court could not, look to the opinion of the Supreme Court in *Bassett, supra,* in determining whether the factual determinations of the trial court are "fairly supported by the record." 28 U.S.C. § 2254(d)(8).

Amicus argues that Jones' "Supportive Documentation" is insufficient to establish the truth of his allegations, and the briefs before us argue extensively the question of whether that "Documentation" gives to his allegations the ring of truth.[7] It is unnecessary, however, to answer that question definitively on this appeal. This court has stated unequivocally that "where a prisoner's habeas petition is dismissed without requiring the respondent to answer, the allegations must be deemed true for the present purposes." *United States ex rel. Curtis v. Illinois,* 521 F.2d 717, 721, *cert. denied,* 423 U.S. 1023, 96 S.Ct. 465, 46 L.Ed.2d 397 (1975); *Wilson v. Phend,* 417 F.2d 1197, 1199 (1969), *later appeal aff'd sub nom., Wilson v. Lash,* 457 F.2d 106, *cert. denied,* 409 U.S. 881, 93 S.Ct. 211, 34 L.Ed.2d 136 (1972). Thus, for example, Jones alleges in his petition that his conviction was obtained through knowing use of perjured testimony. Under *Curtis* and *Wilson,* that allegation must be viewed here as true. As in *Pyle v. Kansas,* 317 U.S. 213, 216, 63 S.Ct. 177, 87 L.Ed. 214 (1942), the perjury allegation here has been neither "refuted nor denied", the Illinois Supreme Court treatment of that allegation being insufficient absent review of the trial record. If that allegation be proven true and material on remand, the use of perjured testimony thus established would alone entitle Jones to issuance of the writ. *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); *Napue v. Illinois,* 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959).

Because Jones' allegation respecting perjured testimony must be presumed true and material on this appeal, and remand thus necessitated, it is not necessary to discuss in detail the remainder of Jones' allegations, all of which are subject to review by the district court in light of pertinent portions of the state trial record on remand.

◼ The rule of *Curtis* and *Wilson* is particularly applicable where the district court not only declines to order a response, but, as here, substitutes a review of a *pro se* petitioner's submissions for the required review of the state court record. This court has said that "liberal construction is to be accorded material drawn *pro se,* including petitions for habeas corpus and other forms of post-conviction relief [Citations omitted]". *Wilson v. Phend,* 417 F.2d at 1199. Because *pro se* pleadings are held "to less stringent standards than formal pleadings drafted by lawyers", *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972), due to "the lack of legal expertise that accompanies their preparation", *French v. Heyne,* 547 F.2d 994, 996 (7th Cir. 1976), it was error for the district court to rely solely on review of Jones' *pro se* submissions as a basis for summarily dismissing his petition.[8]

7. Amicus' brief includes numerous statements of fact not supported in an unchallenged record before us (*inter alia,* that withheld evidence was neither material nor necessary under the accountability theory, that Jones was a party to the escape plan, that Jones never denied participation in the plan, that inmates denied access to defense counsel wished to convey information irrelevant to Jones' participation in the escape and riot, that admission of co-defendants' statements was harmless error, that the admitted statements were not coerced). Those statements may well be supported in portions of the state court record which the state will have the opportunity to submit on remand. They are improper on this appeal. Amicus' felt

necessity of going outside the record before us demonstrates the fallacy in its argument that the district court's review of Jones' "Supportive Documentation" constituted an adequate review of the state court record.

8. Jones, in moving below for appointment of counsel, stated under oath that he "lacks sufficient knowledge of legal proceedings to litigate his claim adequately in a court of law". The district court's minute orders are devoid not only of reasons for considering Jones' claims as having "no merit" but of reasons for taking no action on his motion for appointment of counsel. When, as here, the petition cannot be said to be frivolous *per se,* a failure to determine all

■ Jones' allegations respecting withheld evidence, the admission of co-defendants' statements, and improper jury sequestration, and Amicus' arguments concerning those allegations, raise complex legal issues resolvable only after careful review of the pertinent parts of the state trial record. With those parts available, Jones still cannot be expected, proceeding *pro se*, to illuminate fully the question of whether the withheld evidence met the materiality standard of *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), in light of an accountability theory, nor the question of whether Jones' own statement rendered admission of his co-defendants' statements free of the rule in *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), in light of the mixture of opinions in *Parker v. Randolph*, 442 U.S. 62, 99 S.Ct. 2132, 60 L.Ed.2d 718 (1979), and earlier cases applying *Bruton* to interlocking statements (*Brown v. United States*, 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973); *Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969)),[9] nor the question of whether the allegations that the jury saw visitors on weekends and was not interrogated concerning improper influence, raised a presumption of actual prejudice under the standards of *Goins v. McKeen*, 605 F.2d 947 (6th Cir. 1979), and in light of 28 U.S.C. §§ 2254(d)(2), (6), and (7). A full and adequate presentation of some or all of these questions may require the legal expertise of counsel not only on behalf of respondents but on behalf also of petitioner Jones.

### Conclusion

Accordingly, the summary dismissal of the petition for habeas corpus is reversed and the cause is remanded to the district court with directions to appoint counsel for petitioner, to order a response from the state respondents, to review all relevant portions of the state trial record, and, if deemed necessary, to conduct an evidentiary hearing.

POSNER, Circuit Judge, concurring.

I join Chief Judge Markey's opinion without any reservations, but I think it unfortunate as a matter of fundamental principle that we have to reverse the dismissal of the petition for habeas corpus in this case and I want to explain why I think it unfortunate, in the hope that Congress will consider reforms in the habeas corpus statute.

As an original matter of construction of the Habeas Corpus Act of 1867, as amended, 28 U.S.C. §§ 2241–2253, it is strongly arguable that the court below was required to dismiss the petition because the petitioner had received a full and fair evidentiary hearing in the state courts on all of the issues raised by his petition. Every allegation in the petition was made at Jones' trial, where he had an opportunity to present evidence in support of his allegations and took it. The state trial court found against him on the facts and its findings were affirmed by the state supreme court with a full opinion. Jones had counsel throughout the state-court proceeding. The very record excerpts that he submitted to the court below confirm the fact that he was allowed to and did present evidence to the trial court in support of his allegations.

Since there is no indication that the state courts gave Jones less than a full and fair hearing on the factual assertions underlying his constitutional claims, I would conclude, if I were writing on a clean slate, that Jones is not in custody in violation of the Constitution or laws of the United States. See 28 U.S.C. § 2241(c)(3). This is so even though the district judge below, had he sent for the state-court record and weighed

record portions relevant to the issues raised by the petition should not be charged against an indigent prisoner denied a request for assistance of counsel.

**9.** See, also, this court's opinions in *United States v. Fleming*, 594 F.2d 598, 603, *cert. denied*, 442 U.S. 931, 99 S.Ct. 2863, 61 L.Ed.2d 299 (1979); *United States v. Spinks*, 470 F.2d 64, *cert. denied*, 409 U.S. 1011, 93 S.Ct. 456, 34 L.Ed.2d 305 (1972); *United States ex rel. Wilson v. Warden*, 600 F.2d 66 (1979), *cert. denied*, 444 U.S. 1019, 100 S.Ct. 675, 62 L.Ed.2d 650 (1980).

Jones' evidence against the state's, might for all we know have concluded that the factual determinations underlying the rejection of Jones' constitutional claims by the state courts were erroneous, or even clearly erroneous. It is an affront to the principles both of federalism and of rational criminal procedure for a single federal district judge to reexamine factfindings fairly made by a state trial court and affirmed with full opinion by the state's highest court. It undermines the responsibility and morale of state judges, denies reasonable finality to criminal proceedings and thereby undermines the legitimacy of the criminal-justice system, imposes unduly on the time of our busy district judges, arouses false hopes in state prisoners, and probably does not increase the overall accuracy of constitutional determinations. These concerns were powerfully marshaled almost 20 years ago in Professor Bator's article, *Finality in Criminal Law and Federal Habeas Corpus for State Prisoners*, 76 Harv.L.Rev. 441 (1963), and experience since, impressionistic as it largely is, has increased rather than diminished their force.

But as Chief Judge Markey's opinion makes clear, we are not writing on a clean slate in this case. We are bound by the provisions of 28 U.S.C. § 2254(d), enacted in 1966 in response to the Supreme Court's decision in *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). *Townsend* had held that a federal court in a habeas corpus proceeding brought by a state prisoner was not bound by state-court factfindings even if the findings followed an adequate evidentiary hearing. "[T]he power of inquiry on federal habeas corpus is plenary. Therefore, where an applicant for a writ of habeas corpus alleges facts which, if proved, would entitle him to relief, the federal court to which the application is made has the power to receive evidence and try the facts anew." *Id.* at 312, 83 S.Ct. at 756. Moreover, a federal evidentiary hearing is in some circumstances mandatory, for example when "the state factual determination is not fairly supported by the record as a whole," *id.* at 313, 83 S.Ct. at 757; to determine whether it is fairly supported, review of the complete state-court record is ordinarily indispensable, *id.* at 319, 83 S.Ct. at 760.

*Townsend* was a product of its time. The southern states' resistance to court-ordered desegregation had induced a widespread skepticism concerning the willingness of government in those states, including the courts, to protect the federal constitutional rights of their black citizens; and blacks were then as they are now disproportionately represented in the population of criminal defendants. Moreover, the process whereby the Supreme Court has progressively constitutionalized state criminal procedure, by reading the criminal-procedure provisions of the Bill of Rights expansively and applying the expansive readings to the states through the Fourteenth Amendment, was then just beginning, and the number and variety of constitutional claims that state prisoners would be able to raise in habeas corpus proceedings was not foreseen. Times have changed, and recent decisions of the Supreme Court—notably *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976); *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); and *Sumner v. Mata*, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981)—reflect a much greater receptivity to the arguments against an expansive right of federal habeas corpus for state prisoners than the *Townsend* decision did.

It is thus doubtful that the standard laid down in *Townsend* for deciding when an evidentiary hearing is mandatory would be adopted by the Supreme Court today. But this is completely academic in light of section 2254(d). That statute—unintentionally so far as one can tell—froze the standard laid down in *Townsend v. Sain* against any change of mind (which was not then foreseen) by the Supreme Court, until such time as Congress itself should amend or repeal the statute. Section 2254(d) provides that state factfindings may not be presumed to be correct if the evidentiary hearing in the state court was inadequate for any one of several reasons (see §§ 2254(d)(1)–(7)) *or*—no matter how fair and complete the

state court's evidentiary hearing was—if the federal district court concludes, "on a consideration of [the] part of the record [that is pertinent to the sufficiency of the evidence to support the state court's factual determination] as a whole," that the state court's factual determination "is not fairly supported by the record." 28 U.S.C. § 2254(d)(8). Nothing in the legislative history or circumstances of adoption suggests that the quoted language does not mean what it says. Where, therefore, as in the present case, the habeas corpus petitioner challenges the sufficiency of the evidence relied on by the state court to reject his constitutional claims, the federal district court has to examine the relevant portions of the record to determine whether the state court's factual determination is fairly supported.

As Chief Judge Markey explains, the district court below disabled itself from doing this by dismissing the petition when it did. Jones had not submitted to the court the entire record relevant to his factual contentions but just the portions that supported his claims. Of course, if the submitted portions of the record had provided no support for those claims the district court would have been empowered to deny the petition without further ado. But they did provide support for his claims. Not very much, but if there were no other relevant evidence in the record it would be difficult to understand why the state courts had rejected Jones' claims, and the district court would have had to conclude that the state-court factfindings were not fairly supported by the record and would have had to conduct an evidentiary hearing. There must in fact have been other evidence, evidence contrary to the petitioner's, in the state-court record; this can be inferred from the discussion of the petitioner's contentions by the Illinois Supreme Court. But section 2254(d)(8) prevents the federal habeas corpus judge from deferring to factfindings in a state judicial opinion (if, as here, they are challenged) unless they are supported by the record, and he cannot tell whether they are supported by the record without having the relevant portions of the record before him.

Section 2254(e), also added in 1966, provides that a petitioner who questions the sufficiency of the evidence in support of a state court's factual determination shall, if he is able, produce that part of the record pertinent to a determination of sufficiency. Though indigent, Jones was evidently able to produce the record of the state-court proceedings, because he submitted several hundred pages of the record to the court below. But unless we are to believe that the state presented no evidence contrary to his claims—which is unbelievable in light of the Illinois Supreme Court's opinion—he did not submit the whole of the pertinent record to the district court. The court could therefore have asked him to supplement his submission further. See 28 U.S.C. § 2254(e). It could have issued an order to show cause to the state, see 28 U.S.C. § 2243, which in its return would no doubt have furnished the court with a copy of the other relevant portions of the record. It was empowered though certainly not required to send for the whole record—more than 12,000 pages, we are told, most of it probably irrelevant to petitioner's contentions. But what the court could not do, without violating section 2254(d), was simply dismiss the petition, since the petitioner had challenged the sufficiency of the evidence in the state proceeding to reject his constitutional claims and the court did not have enough of the record before it to show that the evidence was sufficient.

So we are forced to reverse—a result unsupportable as a matter of fundamental principle. If a criminal defendant has received a full and fair evidentiary hearing in state court on his federal constitutional claims, that is all he should be entitled to; the federal courts should not be required, and probably should not be allowed, to reweigh or rehear the facts. But section 2254(d) bars this approach. If this is what Congress wants, it is not for us to complain; but I cannot believe it is what Congress has ever wanted. So far as appears (the legislative history is unilluminating), section 2254(d) was intended simply to clarify, rather than to endorse and perpetuate, the

*Townsend* criteria for review and redetermination of state-court factfindings in federal habeas corpus proceedings; but the effect of the statute has been to preserve as if in amber the outmoded jurisprudence of *Townsend*, and to forestall judicial reform.

If I am correct that the statute has, through inadvertence, come to have an effect different from the one it was intended to have, then it would seem to follow that Congress should reexamine the statute; specifically, that it should consider amending it to provide that federal courts in habeas corpus proceedings may not reexamine state-court factfindings based, as in the present case, on a full and fair evidentiary hearing.